Law Offices of Sara L. Bloom
1120 Huffman Rd. Ste 24-785
Anchorage, AK. 99515
(907) 519-3613
f(907) 345-8570
sara@907lawyer.com

IN THE SUPERIOR COURT OF THE STATE OF ALASKA

SECOND JUDICIAL DISTRICT AT UTQIAGVIK

| | |
|---|---|
| ELIZABETH MADSEN AND )<br>KATRINA MADSEN, )<br> )<br> Plaintiffs, )<br> )<br> v. )<br> )<br>NORTH SLOPE BOROUGH, )<br>ROSEMARIE HABEICH, ELLEN )<br>SOVALIK, AND FORREST )<br>("DEANO") OLEMAUN, in )<br>their official and individual capacities, )<br> )<br> Defendants. )<br>_____ ) | Case No. 2BA-18-00252 CI |

## AMENDED COMPLAINT

Plaintiffs, Elizabeth ("Liz") Madsen and Katrina Madsen (collectively

referred to as Plaintiffs), by and through undersigned counsel, files their Amended

Complaint against the North Slope Borough ("NSB"), and Rosemarie Habeich

("Defendant Habeich"), Ellen Sovalik ("Defendant Sovalik"), and Deano Olemaun

("Defendant Olemaun"), in their official and individual capacities and state as

follows:

# I.   Parties

1. Plaintiff Liz Madsen is over the age of eighteen and is a resident of Utqiagvik, Alaska and the mother of Katrina Madsen.

2. Plaintiff Katrina Madsen is eighteen years old and lives with her mother in Utqiagvik, Alaska.

3. Defendant North Slope Borough is a governmental entity in Utqiagvik, Alaska that operates as a Borough.

4. Defendant Habeich is employed with the NSB as the Director of the Health Department for the North Slope Borough.

5. Defendant Sovalik is employed with the NSB and is Deputy Director of the Department of Health and Social Services for the North Slope Borough.

6. Defendant Olemaun is employed with the NSB and is the Chief Administrative Officer for the North Slope Borough.

# II.   Jurisdiction and Venue

7. This is a civil action for compensatory and punitive damages as well as for costs and other remedies for losses incurred by Plaintiffs as a result of Defendant's actions that took place in Utqiagvik, Alaska by failing to house Plaintiffs in a nonhazardous environment, by failing to remedy the hazardous condition, and retaliating against Plaintiff Liz Madsen for complaining to

North Slope Boroughs Risk Management, Public Works Department ("PWD"), and Law departments regarding safety violations, and in violation of AS § 18.60.08 and/or the North Slope Borough Municipal Code ("NSBMC") § 2.20.420 (Whistleblowing), by taking her out of her job and placing her on investigative leave, then giving her a Notice of Contemplative Discharge with the intention of terminating her employment, a breach of the implied covenant of good faith and fair dealing, and a violation of FMLA for not being provided FMLA and being retaliated against for requesting leave under the Family Medical Leave Act (FMLA).

8. The Superior Court has jurisdiction over this matter pursuant to AS § 09.05.015 and NSBMC § 2.20.420(H)(3) and pendant federal claims.

9. Plaintiffs request that venue be changed to the Third Judicial District at Anchorage to avoid prejudice against Plaintiffs.

## III.   Facts

10. On July 19, 2016, Plaintiff Liz Madsen was hired by the NSB as a Program Manager for the Department of Health and Human Services.

11. In July 2016, the NSB placed Plaintiffs in housing located at 277 Pisokak Street, Utqiagvik, Alaska.

12. As a result of the hazardous living conditions, Plaintiffs requested that they be relocated to a home that did not contain mold.

13. The NSB relocated Plaintiffs to another home located at 5306 Laura Madison Street, Utqiagvik, Alaska.

14. This home previously contained toxic mold that was not remediated.

15. Plaintiffs started having health issues as a result of toxic mold in the home.

16. Plaintiffs complained to various departments within the NSB including PWD and the Mayor's Office to remedy the situation, but the NSB failed to take any action.

17. As a result of the dangerous condition, Plaintiffs developed serious and permanent health issues.

18. Plaintiff Liz Madsen also complained to the PWD and the Mayor's Office regarding several other safety concerns including the fatal monoxide leak involving the building that she worked in and managed.

19. As a result of reporting, the NSB through the actions of Defendants Habeich, Sovalik, and Olemaun improperly removed Plaintiff Liz Madsen from her job and placed Plaintiff Liz Madsen on investigative leave; and after three (3) months on investigative leave, gave her a notice of contemplated discharge.

20. Defendant through its employees including Defendants Habeich, Sovalik, and Olemaun disparaged Plaintiff Liz Madsen to others, harming her reputation and financial well- being.

21. Plaintiff Liz Madsen also requested leave under FMLA to attend to her and Plaintiff Katrina Madsen's injuries as a result the toxic mold environment and was ignored by her employer after making numerous requests for such leave and was given a second Notice of Contemplated Discharge after making continued requests for such leave.

## IV. Causes of Action

### A. Count I- Battery (Against NSB).

22. Plaintiffs incorporate by reference the foregoing paragraphs 1-21.

23. The NSB knowingly placed Plaintiffs in a hazardous environment by placing Plaintiffs in a home located at 5306 Laura Madison Street knowing that it contained toxic mold.

24. As a result of the NSB's intentional acts and offensive contact, Plaintiff suffered debilitating and permanent injuries.

### B. Count II- Gross Negligence (Against NSB).

25. Plaintiffs incorporate by reference the foregoing paragraphs 1-24.

26. The NSB had a duty of care to Plaintiffs to place them into housing free of toxic mold.

27. The NSB had a duty of care to Plaintiffs to remedy a hazardous condition when it was reported to Defendant.

28. The NSB and its officials breached its duty of care when it *knowingly* placed Plaintiffs in a home that had toxic mold.

29. The NSB breached its duty of care when it failed to respond and remedy toxic mold from the home in which Plaintiffs were living.

30. As a proximate cause, a substantial factor, and as the result of the NSB's breaches, Plaintiffs suffered debilitating and permanent injuries including intrinsic lung disease and requiring them to use inhalers and take medications.

## C.     Count III-Negligence (Against NSB).

31. Plaintiffs incorporate by reference the foregoing paragraphs 1-30.

32. The NSB had a duty of care to Plaintiffs to place them into housing free of toxic mold.

33. The NSB had a duty of care to Plaintiffs to remedy a hazardous condition when it was reported to Defendant.

34. The NSB and its officials breached its duty of care when it placed Plaintiffs in a home that had toxic mold.

35. The NSB breached its duty of care when it failed to respond and remedy toxic mold from the home in which Plaintiffs were living.

36. As a proximate cause, a substantial factor, and as the result of the NSB's breaches, Plaintiffs suffered debilitating and permanent injuries causing Plaintiffs including intrinsic lung disease and requiring them to use inhalers and take medications.

**D.**     <u>Count IV – Whistleblowing- Retaliation for Reporting Hazardous Conditions (Against NSB and Defendants Habeich, Sovalik, and Olemaun)</u>

37. Plaintiff Liz Madsen incorporates by reference the foregoing paragraphs 1-36.

38. On or about January-October 2017, Plaintiff Liz Madsen legally and repeatedly reported the hazardous mold condition to the NSB's Risk Management, PWD, the Mayor's Office, and Law Department.

39. Plaintiff Liz Madsen also reported to the PWD and the Mayor's Office other safety concerns such as the fatal monoxide leak involving the building that she worked in and managed and PWD.

40. NSBMC § 2.20.420(A)(1) states in part that no Borough employee, official or contractor may discharge, threaten or otherwise discriminate, or attempt to discharge, threaten or otherwise discriminate against a Borough employee regarding his compensation, terms, conditions, location or privileges of employment because:

the employee, or a person acting on behalf of the employee, reports to a public body or is about to report to a public body a matter of public concern.

41. NSBMC § 2.20.420(G) states in part that a matter of public concern includes a violation of a state, federal or municipal law, regulation or ordinance; or a danger to public health or safety.

42. Defendants violated NSBMC § 2.20.420.

43. Defendants also violated AS § 18.60.089(a) which states in relevant part that "a person may not discharge or discriminate against an employee because the employee has filed a complaint....related to the enforcement of occupational safety and health standards....or because an employee has exercised personally or on behalf of others a right afforded under AS 18.60.010-18.60.105."

44. Defendants also violated Chapter 5.03 of the Borough's Personnel Rules and Regulations "PRR") (Whistleblowing provision) effective August 4, 2000 and revised May 21, 2013) which covers prohibition for whistleblowing.

45. As a result of reporting the hazardous conditions in violation of law and/or policies and procedures, Defendants placed Plaintiff Liz Madsen on investigative leave, removed her from her job, gave her a notice of contemplated discharge, and went on a fishing expedition to try to figure out how to terminate her employment.

46. Defendants found bogus and unsubstantiated reasons for termination when Plaintiff Liz Madsen had no prior disciplinary action and improperly gave a notice of contemplated discharge causing her damages.

**E.     Count V- Defamation (Against NSB and Defendants Habeich, Sovalik, and Olemaun)**

47.  Plaintiff Liz Madsen incorporates by reference the foregoing paragraphs 1-46.

48.  Plaintiff Liz Madsen worked as a Program Manager since 2016 and has resided in Utqiagvik, Alaska f/k/a Barrow, Alaska since 2016.

49.  Plaintiff Liz Madsen has maintained an excellent reputation and has been a hard-working, productive employee with the Borough.

50.  Defendants Habeich, Sovalik, and Olemaun are employees and agents of the Defendant North Slope Borough.

51.  Plaintiff Liz Madsen is informed and believes that these employees of Defendant have and continue to make statements including but not limited to disparaging remarks by telling others in the community, fellow employees, and the professional community of which Plaintiff Liz Madsen is a member, that Plaintiff Liz Madsen is making up stories and lying about her injuries, and Defendants are defaming her character and reputation.

52.  Defendants Habeich, Sovalik, and Olemaun and possibly other employees of Defendant had knowledge or should have known that these statements were false.

53.  As a proximate cause of Defendants disseminating these untruths, Plaintiff Liz Madsen's reputation has been harmed and adversely affected her fitness

for proper conduct in her lawful profession causing her damages as she resides and works in Utqiagvik, Alaska.

F. **Count VI- Defendants Breach of Good Faith and Fair Dealing(Against NSB and Defendants Habeich, Sovalik, and Olemaun)**

54. Plaintiff Liz Madsen incorporates by reference the foregoing paragraphs 1-53.

55. Plaintiff' Liz Madsen's employment with the Defendant NSB includes the implied covenant of good faith and fair dealing which is embodied in every employment relationship entered into in Alaska and imposes a duty on Defendant NSB and its officials to treat its employees in a fair, equitable, nonbiased, and nondiscriminatory manner.

56. All Defendants breached its duty when it subjected Plaintiff to a hostile work environment and allowed to terminate Plaintiff Liz Madsen's employment in retaliation for reporting.

57. Defendant NSB also breached its duty as it failed to properly supervise, monitor, properly train or admonish Elizabeth Madsen's supervisors and individual defendants for their retaliatory behavior and actions.

58. As a result of Defendants' breaches, Defendant and its employees caused Plaintiff Liz Madsen damages including lost wages, other economic damages, and pain and suffering.

59. As a result of engaging in such discriminatory behavior, Plaintiff also suffered physical and emotional injuries.

## G.   **Pendant Federal Cause of Action-Retaliation for Requesting FMLA (against the NSB)**

60. Plaintiff Liz Madsen incorporate by reference the foregoing paragraphs 1-59.

61. Defendant NSB is an employer covered by the Family and Medical Leave Act pursuant to 29 U.S.C. 2601, *et seq*.

62. Plaintiff Liz Madsen was entitled to leave under the Family and Medical Leave Act, pursuant to 29 CFR 825.114.

63. Defendant NSB engaged in prohibited conduct under the FMLA by interfering with, restraining or denying Plaintiff Liz Madsen's rights provided under the Act.

64. Defendant NSB's action foreclosed Plaintiff Liz Madsen's rights under the FMLA, including but not limited to attempting to terminate her employment for applying for, requesting, and/or taking leave under the FMLA.

65. Defendant NSB's actions were intentional, with deliberate disregard for the rights and sensibilities of the Plaintiff Liz Madsen.

66. As a direct and proximate result of Defendant NSB's wrongful acts and omissions, Plaintiff Liz Madsen sustained loss of earnings and earning capacity; loss of fringe and pension benefits; suffered mental anguish, physical and emotional distress; humiliation and embarrassment; loss of

professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful employment of her choice.

67. On this count Plaintiff Liz Madsen prays for judgment against the Defendant NSB as follows:

1. Statutory damages for lost wages, benefits, and other compensation, plus interest thereon at the statutory rate, pursuant to 29 U.S.C. § 2617(a)(1)(A)(i) and 29 U.S.C. §§ 2617(a)(1)(A)(ii);

2. Additional liquidated damages in the amount of the above-requested award, pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

3. Equitable relief in the form of reinstatement or front pay, as the court deems appropriate, pursuant to 29 U.S.C. § 2617(a)(1)(B); and

4. Attorney's fees, expert witness fees, and costs of this action, pursuant to 29 U.S.C. § 2617(a)(3), and such other relief as this Court may deem just and proper.

WHEREFORE, Plaintiffs seeks compensatory damages, economic and noneconomic damages, as Plaintiffs suffered lung injuries including permanent lung disease, pain and suffering, and medical damages, and Liz Madsen also suffered emotional damages, harm to her reputation and financial well-being, future lost wages and front pay; and also requests punitive damages for the willful and retaliatory conduct by Defendants Habeich, Sovalik, and Olemaun, individually and severally, and request this court to enter judgment in Plaintiffs' favor and award an

amount that is just and reasonable and to include attorney's fees and costs, and

requests an ad damnum in the amount of five million dollars ($5,000,000).

Respectfully submitted,

Dated December 6, 2018

Sara L. Bloom
Alaska Bar No. 1509071
Attorney for Plaintiffs